Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
**PACIFIC TRIAL ATTORNEYS, APC**
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MILTITA CASILLAS,<br><br>Plaintiff,<br><br>v.<br><br>ZAPPOS.COM LLC, a Delaware entity, d/b/a WWW.ZAPPOS.COM,<br><br>Defendant. | Case No. 2:25-cv-01367-WLH-JPR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Pl.'s Request for Judicial Notice; Response to Def.'s Request for Judicial Notice; Objections to Moon Decl.; [Proposed] Order filed concurrently herewith]<br><br>Date: May 30, 2025<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu |

# TABLE OF CONTENTS


I. INTRODUCTION ....... 1

II. ARGUMENT ....... 1

A. Defendant's Statutory Standing Argument Is Without Merit. ....... 1

1. An IP Address Constitutes a Consumer's Personal Information in California as Recognized by Multiple California Statutes, Which Supports a Reasonable Expectation of Privacy. ....... 1

2. Case Law Supports Plaintiff's Position Regarding Her Standing. ....... 3

3. *Smith v. Maryland* and *United States v. Forrester* Are Both Distinguishable. ....... 6

B. The FAC Sufficiently Alleges a Violation of Section 638.51 of the Penal Code. ....... 8

1. The FAC Alleges that Third-Party Software Is Either a "Pen Register" or a "Trap and Trace Device". ....... 8

a. The PR/TT Beacons Qualify as a "Device or Process" Because They Constitute "Software that Identifies Consumers, Gathers Data, and Correlates that Data." ....... 9

b. The IP Addresses Collected by the PR/TT Beacons Qualify as "Addressing Information." ....... 11

c. IP Addresses Are "Transmitted by an Instrument or Facility From Which a Wire or Electronic Communication Is Transmitted." ....... 12

d. Collecting the IP Address of User Devices Collects Record Information, Which Does Not Constitute the Content of Communications. ....... 14

e. The Case Law Supporting Plaintiff's Position Is Both Comprehensive and Persuasive. ....... 14

2. Defendant Is Not an Electronic Communication Service Provider. ....... 14

3. Section 638.51 Provides a Private Right of Action. ....... 16

4. The FAC Alleges Non-Consent. ....... 16

C. The Court Should Reject Defendant's Attempt to Smear Plaintiff and Her Counsel. ....... 18

**CERTIFICATE OF COMPLIANCE** ....... 19

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. 2008) ....................3

*Barker v. Riverside County Office of Education*, 584 F.3d 821 (9th Cir. 2009) ....................10

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................16

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) ....................18

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024) ....................16

*Casillas v. Cypress Ins. Co.*, 770 Fed. Appx. 329 (9th Cir. 2019) ....................15

*Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, (C.D. Cal. Apr. 3, 2025) ....................1, 4, 14

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................16

*Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) ....................16

*D'Angelo v. Penny Opco, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) (Bashant, J.) ....................5

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ....................6

*Garcia v. City of Laredo, Tex.*, 702 F.3d 788 (5th Cir. 2012) ....................15

*Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985 (W.D. Wash. 2022) ....................15

*Geiger v. Charter Comms., Inc.*, 2019 WL 4284502 (C.D. Cal. Jan. 23, 2019) (Gee, J.) ....................3

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................... *passim*

*In re Betterhelp, Inc. Data Disclosure Cases*,
2024 WL 3416511 (N.D. Cal. July 15, 2024)....................3

*In re Certified Question of Law*,
858 F.3d 591 (FISCR 2016)....................6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021)....................4, 5, 6, 13

*In re Google*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.)....................17

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)....................2

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................11, 15

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*,
289 F. Supp. 3d 201 (D.D.C. 2018)....................16

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)....................16

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................12, 14

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)....................11

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022)....................17

*Leitner v. Morsovillo*,
2022 WL 7074322 (W.D. Mo. Oct. 12, 2022)....................15, 16

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025).................... *passim*

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021)....................15

*Mirmalek v. Los Angeles Times Comms. LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024).................... *passim*

*Moody v. C2 Educ. Systems Inc.*,
742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (Klausner, J.).................... *passim*

*Osgood v. Main Streat Marketing, LLC*,
2017 WL 131829 (S.D. Cal. Jan. 13, 2017)....................5

*Prescott v. Bayer Healthcare LLC*,
2020 WL 4430958 (N.D. Cal. July 31, 2020)....................3

*Quon v. Arch Wireless Operating Co., Inc.*,
529 F.3d 892 (9th Cir. 2008), *rev'd on other grounds sub nom. City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010)....................15

*Rodriguez v. Autotrader.com, Inc.*,
- F. Supp. 3d -, 2025 WL 65409, \(C.D. Cal. Jan. 8, 2025) (Klausner, J.)....................1, 14, 17

*Shah v. Capitol One Financial Corp.*,
- F. Supp. 3d -, 2025 WL 714252 (N.D. Cal. Mar. 3, 2025)....................3

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024).................... *passim*

*Smith v. Maryland*,
442 U.S. 735 (1979)....................6, 8

*Spacone v. Sanford, LP*,
2017 WL 6888497 (C.D. Cal. May 11, 2017) (O'Connell, J.)....................14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................5

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004)....................15

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2007)....................6, 7, 8, 12

*United States v. Staves*,
383 F.3d 977 (9th Cir. 2004)....................17

*Vizcarra v. Michaels Stores, Inc.*,
710 F. Supp. 3d 718 (N.D. Cal. 2024)....................3

*Wesch v. Yodlee, Inc.*,
2021 WL 6206644 (N.D. Cal. July 19, 2021)....................16

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025)....................1, 10, 14

**California Cases**

*Friddle v. Epstein*,
16 Cal. App. 4th 1649 (1993)....................4, 5

*Hill v. National Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994)....................1

*Ion Equipment Corp. v. Nelson*,
110 Cal. App. 3d 868 (1980) .....5

*Kleffman v. Vonage Holdings Corp.*,
49 Cal. 4th 334 (2010) .....1

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .....5, 17

*Schoshinski v. City of Los Angeles*,
9 Cal. App. 5th 780 (2017) .....3, 4

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .....5

**U.S. Constitution**

Article III .....4

**Federal Statutes**

18 U.S.C.
§ 2510.....16
§ 3127.....16

Electronic Communications Privacy Act of 1986
§ 101, Pub. L. No. 99–508, 100 Stat 1848 (1986) ..... *passim*

Fair Credit Reporting Act .....5

Pen Register Act .....7, 13, 15, 16

Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351,
82 Stat. 197 (1968).....6, 7, 11, 16

USA Patriot Act of 2001, Pub. L. No. 107–56
§ 216, 115 Stat. 272 (2001).....7, 8, 13

**California Statutes**

Civil Code
§ 1798.100 *et seq.* .....2
§ 1798.100(a) .....2
§ 1798.100(c) .....2, 3
§ 1798.105(a) .....3
§ 1798.120(a) .....3
§ 1798.140.....2
§ 1798.140(v)(1)(A).....2
§ 1798.175.....2
California Consumer Privacy Act of 2018.....2, 3, 7, 8

Consumer Legal Remedies Act ....3

Penal Code
§ 630....12, 17
§ 631....11
§ 631(a) ....17
§ 637.2....4, 5, 16
§ 637.2(a) ....5
§ 637.2(c) ....5
§ 638.50....12, 13, 14
§ 638.50(b).... *passim*
§ 638.50(c) .... *passim*
§ 638.51.... *passim*
§ 638.51(b)....14, 16
§ 638.51(b)(1) ....14, 16
§ 638.52....9, 12, 13
§ 1546 *et seq.* ....2
§ 1546(d)....2
§ 1546(h)....2
§ 1546.1(a)(1) ....2
§ 1546.1(b)....2
§ 1546.4(a) ....2
Chapter 1.5....16
California Electronic Communications Privacy Act....2, 7
California Invasion of Privacy Act .... *passim*

**Federal Court Rules**

L.R. 11-6.1 ....18

**Other Authorities**

Assembly Committee on Public Safety Bill Analysis of June 21, 2010 for Senate Bill No. 1428 (2009-2010 Regular Session)....9

First Amended Compl. filed in *Greenley v. Kochava, Inc.*, No. 3:22-cv-01327-BAS-AHG, Doc. 10 at ¶ 77; Pg. 24 of 55 (S.D. Cal.) ....10

*IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/; *see* http://web.archive.org/web/20240329095134/www.accudata.com/blog/ip-targeting/ (last visited Feb. 19, 2024)....11

Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n. 427 (2018)....7

S. Freiwald, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Review 949, 985 (1996). ....6, 7

S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968)....7

S. Rep. No. 99-541, at 14, 1986 WL 31929, 1986 U.S.C.C.A.N. 3555, 3568 (Oct. 17, 1986) ....................15

Senate Committee on Public Safety Bill Analysis of Apr. 12, 2010 for Senate Bill No. 1428 (2009-2010 Regular Session)....................9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Although Defendant's Motion to Dismiss to the First Amended Complaint ("FAC") contends that individuals lack a reasonable expectation of privacy in the IP addresses of their respective computer devices used to communicate with websites, Defendant conveniently ignores that there are at least eight different federal district court decisions that have comprehensively explained that tracking software like what is alleged in the FAC can constitute either a pen register or a trap and trace device under § 638.51 of the Penal Code. *See, e.g., Conohan v. Rad Power Bikes Inc.*, at *6-*7 (C.D. Cal. Apr. 3, 2025); *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3-*7 (S.D.N.Y. Feb. 20, 2025); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11-*12 (S.D. Cal. Feb. 13, 2025); *Rodriguez v. Autotrader.com, Inc.*, - F. Supp. 3d -, 2025 WL 65409, at *5-*6 (C.D. Cal. Jan. 8, 2025) (Klausner, J.); *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *3-*5 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-33 (N.D. Cal. 2024); *Moody v. C2 Educ. Systems Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (Klausner, J.); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

## II. ARGUMENT

### A. Defendant's Statutory Standing Argument Is Without Merit.

#### 1. An IP Address Constitutes a Consumer's Personal Information in California as Recognized by Multiple California Statutes, Which Supports a Reasonable Expectation of Privacy.

Although Defendant has challenged Plaintiff's statutory standing by arguing that Plaintiff has no reasonable expectation of privacy[1] in the collection of her device's IP address,[2] Defendant conveniently omits to mention that over the past decade, California

[1] It is well established that a reasonable expectation of privacy is a concept derived from the common law. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 27 (1994) (referring to "the common law's insistence on objectively reasonable expectations of privacy"). It is not a required element of the ***statutory*** cause of action at issue herein for violation of section 638.51.

[2] "An IP address consists of 'four sets of numbers separated by periods, such as '12.34.56.78.' 'IP addresses function much like Social Security numbers or telephone numbers: each IP address is unique and corresponds to a specific entity connected to the Internet.'" *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 337 (2010) (internal citations omitted).

law has expressly recognized a legally protected privacy interest in IP addresses. For example, in 2015, California's Legislature enacted California's Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code § 1546 *et seq.*, which precludes the government from compelling internet service providers to provide a user's IP addresses without a warrant or other limited exception. (Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of CECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial).

More recently, in 2018, the California Legislature enacted into law the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," constitute a consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A)). The CCPA's recognition supports a reasonable expectation of privacy in such personal information. *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information ***such as plaintiff's IP address***….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy. Not so. First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Civ. Code § 1798.140).

In addition, the CCPA,[3] which provides consumers with the right to know when a business is collecting personal information about them, (Cal. Civ. Code § 1798.100(a)), also provides:

> "A business' collection, use, ***retention***, and sharing of a consumer's personal information shall be reasonably necessary and proportionate to achieve the purposes for which the personal information was collected or processed, or for another disclosed purpose that is compatible with the context in which the personal

[3] Notably, the CCPA does not preempt CIPA. *Mirmalek*, 2024 WL 5102709, at *5 (citing Cal. Civ. Code § 1798.175) ("the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control").

> information was collected, and not further processed in a manner that is incompatible with those purposes."

(Cal. Civ. Code § 1798.100(c)) (emphasis added). And, the CCPA provides a consumer with "the right to request that a business ***delete*** any personal information about the consumer which the business has collected from the consumer," (Cal. Civ. Code § 1798.105(a) (emphasis added)), and "the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information," *i.e.*, "the right to opt-out of sale or sharing," (Cal. Civ. Code § 1798.120(a)). If a consumer can exercise such opt-out right after the consumer's personal information has already been collected by a business, then the CCPA indicates the Legislature's intent that businesses cannot ***retain*** personal information like a consumer's IP address in perpetuity if: (i) the retention is not compatible with purposes deemed appropriate by the Legislature; or (ii) a consumer opts-out of such retention. Plaintiff has opted-out of such retention here as demonstrated by Plaintiff's pre-filing demand letter dated November 15, 2023, which was sent before the initial Complaint was filed. Further, any confusion about Plaintiff's basis was dispelled when Plaintiff actually filed suit. *Cf. Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 730 (N.D. Cal. 2024) (initial complaint's allegations provided CLRA notice for purposes of amended complaint); *Prescott v. Bayer Healthcare LLC*, 2020 WL 4430958, at *9 (N.D. Cal. July 31, 2020) (same). Defendant is acting as though it can ignore Plaintiff's opt-out with impunity.[4]

**2. Case Law Supports Plaintiff's Position Regarding Her Standing.**

Although Defendant challenges Plaintiff's statutory standing, Plaintiff is beneficially interested in the instant action. *Schoshinski v. City of Los Angeles*, 9 Cal. App. 5th 780, 791 (2017) ("To have standing, a party must be beneficially interested in the

[4] Defendant's argument that "Plaintiff does not allege Zappos violated the CCPA," (Def.'s Mem. at 3:14-15), ignores *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need to identify the statutory or constitutional source of the claim in order to survive a motion to dismiss"), *cited in Geiger v. Charter Comms., Inc.*, 2019 WL 4284502, at *2 (C.D. Cal. Jan. 23, 2019) (Gee, J.) ("[P]laintiffs need not plead legal theories, only sufficient facts to support potential claims for relief."). Multiple federal courts have construed the CCPA as not limited to data breach fact patterns involving hackers. *Shah v. Capitol One Financial Corp.*, - F. Supp. 3d -, 2025 WL 714252, at *8 (N.D. Cal. Mar. 3, 2025) (citing cases); *In re Betterhelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4-*5 (N.D. Cal. July 15, 2024).

controversy[.]") (citation omitted). The Court can reasonably infer from the FAC's allegations that by capturing Plaintiff's IP address, Defendant and its third party spyware developers de-anonymized Plaintiff and digitally fingerprinted Plaintiff and other visitors to the website at: https://www.zappos.com/ (the "Website") before any consent could be obtained. (FAC ¶¶ 33-93.)

Most recently, in *Conohan*, *supra*, the federal court rejected a challenge to the Article III standing of a plaintiff alleging the violation of section 638.51 of the Penal Code by running software code on a website that sent user details such as device and browser information, geographic information, referral tracking, and URL tracking to TikTok. 2025 WL 1111246, at *5-*6. *Conohan* is directly on point. The allegations in the FAC regarding the invasion of privacy actionable injury and statutory standing from the collection of Plaintiff's information are indistinguishable here. (FAC ¶¶ 33-93.)

In *Mirmalek*, *supra*, the federal court rejected a challenge to the statutory standing of a plaintiff alleging the violation of section 638.51 by disclosing the website user's IP address to third parties without the plaintiff's consent and because such IP address is then used for marketing and advertising purposes including website analytics. 2024 WL 5102709, at *4.

In *Moody*, *supra*, the federal district court held:

> "***Here, there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing***. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the TikTok Software collects data from every visitor of the Website; and (3) Plaintiff allegedly visited the Website on February 28, 2024. These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Thus, Defendant's argument fails."

*Moody*, 742 F. Supp. 3d at 1078 (emphasis added).

The Court must follow California Court of Appeal decisions (unless it believes the California Supreme Court would rule otherwise), which squarely held that ***any*** invasion of privacy is an affront to dignity. *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("Any invasion of privacy involves an affront to human dignity"). Indeed, the statutory

damages remedy in Penal Code § 637.2(a) is available regardless of actual damages. (Penal Code § 637.2(c)) ("It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, ***actual damages***.") (emphasis added); *Friddle*, 16 Cal. App. 4th at 1661 (rejecting argument "that section 637.2 does not kick in until actual damages begin to be incurred") ("The right to recover this statutory minimum accrued at the moment the [CIPA] was violated."); *Ion Equipment Corp. v. Nelson*, 110 Cal. App. 3d 868, 882 (1980) ("actual damages are not a necessary prerequisite to an action pursuant to section 637.2"). Thus, the Legislature intended to deter ***any*** CIPA violation by omitting an actual damages requirement for CIPA violations. *D'Angelo v. Penny Opco, LLC*, 2023 WL 7006793, at *4 (S.D. Cal. Oct. 24, 2023) (Bashant, J.) ("The California legislature has created statutory damages for each violation of CIPA, with 'no separate showing of injury aside from a violation of the privacy rights protected by CIPA' required.").

"[A]llegations of violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact because instead of a bare technical violation of a statute, as was the case under the FCRA considered in *Spokeo*[, *Inc. v. Robins*, 578 U.S. 330 (2016)], a CIPA violation 'involves much greater concrete and particularized harm ... a violation of privacy rights', and therefore, a violation of CIPA is a 'violation of a procedural right granted by statute ... sufficient ... to constitute injury in fact.'" *Osgood v. Main Streat Marketing, LLC*, 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017).

Indeed, in *Ribas v. Clark*, 38 Cal. 3d 355 (1985), the California Supreme Court noted in the context of secret monitoring of telephonic communications that "the right to control the nature and extent of the firsthand dissemination of [a speaker's] statements" "denies the speaker an important aspect of privacy of communication". *Id.* at 361 (citation omitted), *quoted in Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021). Notably, longstanding Ninth Circuit precedent has recognized that historical privacy rights " 'encompass[] the individual's control of information concerning his or her person' ... the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet*

*Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). Denying Plaintiff's right to control the dissemination of Plaintiff's IP address ***and the other user data linked to her IP address*** captured by third party spyware vendors for marketing purposes is highly offensive and constitutes an invasion of privacy.

### 3. *Smith v. Maryland* and *United States v. Forrester* Are Both Distinguishable.

Defendant's reliance upon both *Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Forrester*, 512 F.3d 500, 519 (9th Cir. 2007), is misplaced as both are distinguishable for many reasons.

*Smith* narrowly defined a "pen register" in relevant part as "a ***mechanical device*** that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released." 442 U.S. at 736 n.1 (emphasis added). As a law review article points out, however, *Smith* relied upon a definition of a "pen register" that was later significantly modified by the enactment of the Electronic Communications Privacy Act of 1986 ("ECPA"), § 101, Pub. L. No. 99–508, 100 Stat 1848 (1986), which amended Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub. L. No. 90-351, 82 Stat. 197 (1968) ("Wiretap Act").[5] S. Freiwald, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Review 949, 985 (1996). Significantly, such 1986 enactment "omitted the Supreme Court's reference to the 'mechanical' nature of the pen register device, and it did not limit the pen register to something that acquired information about a telephone…." *Id.* The "final version of the ECPA omitted references to 'wire communications' that likely would have limited the use of pen registers to the interception of the numbers dialed in traditional telephone

[5] "Prior to 1986, there was no federal statute that governed the use of pen registers and trap-and-trace devices.…Title III [of the Wiretap Act] was silent … as to the use of pen registers or other devices that could intercept non-content information.…In *Smith*…, … the Court held that pen registers…could be installed and operated without the need for a court order. In 1986, Congress changed that regime with the enactment of the [ECPA]. That statute added a provision authorizing the government to install and use pen registers and trap-and-trace devices, but only upon obtaining a court order." *In re Certified Question of Law*, 858 F.3d 591, 600-01 (FISCR 2016).

conversations." *Id.* "The ECPA's pen register could capture 'other impulses' besides electronic impulses and did not necessarily produce a paper record." *Id.* "The broadly worded ECPA pen register definition was clearly designed to handle the electronic communications that the ECPA brought under legislative protection." *Id.* Significantly, the ECPA "***omitt[ed] language limiting the types of information a pen register could acquire***." *Id.* (emphasis added). Indeed, even at the time that such law review article was published in 1996, courts had already "regarded as pen registers devices that incorporate computer hardware and software." *Id.* at 987 & n.183 (citing cases). The subsequent enactment of the federal USA Patriot Act of 2001 ("Patriot Act"), Pub. L. No. 107–56, § 216, 115 Stat. 272 (2001), further modified the "pen register" definition to cover software processes that collect information.[6]

*Forrester* is distinguishable for many reasons. First, *Forrester* had no occasion to consider whether an Internet user has a reasonable expectation of privacy as to the user's IP addresses on the user's devices.

Second, *Forrester* was decided in 2008, well before the CECPA and CCPA were enacted into law.

Third, *Forrester* treated the "IP addresses of websites visited," as "unprotected addressing information," 512 F.3d at 510, because the Ninth Circuit viewed the "IP addresses of websites visited," as irrelevant to "know[ing] the particular pages on the websites the person viewed." *Id.* at 510. If the government could "know the particular pages on the websites the person viewed" by learning the "IP addresses of websites visited," then the outcome in *Forrester* may have been different. *Id.* at 510 n.6.

Fourth, *Forrester* was decided more than 15 years ago, before the identity resolution

---

[6] The reason why the federal Pen Register Act and CIPA's pen register and trap and trace device provisions are so similar is because the Pen Register Act sets a "floor," *i.e.*, a minimum standard that states can exceed with more stricter privacy laws, but they cannot enact "less restrictive legislation" as confirmed by the Wiretap Act's legislative history. Ira S. Rubenstein, *Privacy Localism*, 93 Wash. L. Rev. 1961, 2032 & n.427 (2018) (citing S. Rep. No. 90-1097, at 98 (1968), 1968 WL 4956, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2187 (Apr. 29, 1968)). Thus, because the Patriot Act amended the "pen register" and "trap and trace device" definitions to cover software processes that collect information, California could not enact "less restrictive legislation" on this same topic.

industry existed and before tracking software embedded into websites as "cookies" to track the specific webpages visited by Internet users became technically feasible amongst websites. Given that it is currently technically feasible to track the specific webpages visited by Internet users via tracking software code embedded into websites by learning the users' IP addresses on their computerized devices, *Forrester* is predicated upon outdated assumptions about computer technology, which is precisely why the Legislature enacted the CCPA and indicated that users' IP address constitutes personal information.

Finally, *Forrester* relied heavily upon *Smith*. *Forrester*, 512 F.3d at 509-10. But, as mentioned above, *Smith* was decided before any federal statute governed the use of pen registers and trap-and-trace devices and several decades before the Patriot Act was enacted into federal law on October 26, 2001. Notably, *Forrester* considered the "pre-October 2001 version of the pen register statute" because the surveillance at issue took place in May-July 2001. *Forrester*, 512 F.3d at 512 & n.7. Thus, *Forrester* did not consider the effect of the Patriot Act's amendment to the "pen register" definition on its decision. Nor did *Forrester* recognize that the version of the "pen register" definition in the ECPA applicable to that appeal had significantly changed from the version of the definition considered decades earlier by the Supreme Court in *Smith* before any federal statute governed the use of pen registers and trap-and-trace devices.

**B. The FAC Sufficiently Alleges a Violation of Section 638.51 of the Penal Code.**

**1. The FAC Alleges that Third-Party Software Is Either a "Pen Register" or a "Trap and Trace Device".**

The FAC adequately alleges that third-party software deployed on the Website is either a "pen register" or a "trap and trace device" because it is either: (i) a "device or process" that "records or decodes" "routing, addressing, or signaling information" "transmitted by an instrument or facility from which a[n] … electronic communication is transmitted, but not the contents of a communication," within the meaning of section 638.50(b); or (ii) a "device or process" that "captures" "the incoming electronic … impulses that identify the" "routing, addressing, or signaling information" "reasonably

likely to identify the source of a[n] … electronic communication,"[7] within the meaning of section 638.50(c), by collecting the IP addresses of user devices and other identifying information used to analyze how Plaintiff and other Website users interaction with the Website. (FAC ¶¶ 63, 67-93.)

**a. The PR/TT Beacons Qualify as a "Device or Process" Because They Constitute "Software that Identifies Consumers, Gathers Data, and Correlates that Data."**

In *Greenley*, *supra*, the federal court explained:

> "***Today, pen registers take the form of software***. As a result, private companies and persons have the ability to hack into a person's telephone and gather the same information as law enforcement. Perhaps for this reason, ***the California legislature does not limit its prohibition on installing pen registers to law enforcement***. *Compare* Cal. Penal Code § 638.51 ("[A] *person* may not install or use a pen register ..." (emphasis added)), *with id.* § 638.52 ("A *peace officer* may make an application to a magistrate for an order ... authorizing ... the installation and use of a pen register ..." (emphasis added))."

684 F. Supp. 3d at 1050 (first and second emphasis added). *Greenley* added:

> "Moreover, the Court cannot ignore the expansive language in the California Legislature's chosen definition. The definition is specific as to the type of data a pen register collects—'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but it is vague and inclusive as to the form of the collection tool—'a device or process.' *See* Cal. Penal Code § [6]38.50(b). ***This indicates courts should focus less on the form of the data collector and more on the result***. Thus, the Court applies the plain meaning of a 'process' to the statute. A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'*** (Am. Compl. ¶¶ 67, 74.) ***Thus, the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a 'pen register.'***'"

*Id.* (emphasis added). Thus, as mentioned above, *Greenley*, in analyzing what constitutes a "process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code, stated:

> "A process can take many forms. ***Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'***'"

---

[7] Defendant ignores that the Legislature's intent to broadly define the meaning of "electronic communication," which is a crucial term used within the definitions of "pen register" and "trap and trace device" in Penal Code § 638.50(b) & (c), is clear from relevant legislative history that Defendant has conveniently ignored. (Pl.'s RJN Ex. 1 at 2, 6, 7, 9; Pl.'s RJN Ex. 2 at 6.)

*Greenley*, 684 F. Supp. 3d at 1050 (emphasis added). Indeed, in *Greenley*, the defendant's software developer kits ("SDKs") intended for use in third-party software applications for the defendant's corporate clients such as Airbnb, Disney, and Kroger allegedly collected the IP address of app users as well as other user data. Although *Greenley* does not expressly address the collection of IP addresses in addressing the allegations of the first amended complaint at issue therein, a review of the first amended complaint filed in *Greenley* clearly shows the existence of such allegation as follows:

> "This data collection includes all sorts of website information, as well as Plaintiffs' and Class Members' respective ***IP addresses***, browser and device information, user IDs, geolocation data, and other data, [and] are used by Defendant to 'fingerprint' individuals across the internet for Defendant's benefit, deriving revenue from the targeted marketing and sale of this information to third parties."

(First Amended Compl. filed in *Greenley v. Kochava, Inc.*, No. 3:22-cv-01327-BAS-AHG, Doc. 10 at ¶ 77; Pg. 24 of 55 (S.D. Cal.); Pl.'s RJN Ex. 3) (emphasis added). Thus, *Greenley*'s reference to software constituting a "process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code that "identifies consumers," "gathers data" and "correlates that data through unique 'fingerprinting,'" is intended to refer to a ***combination*** of IP addresses ***and other user data*** in order to "fingerprint" individuals across the internet. Four other federal court decisions expressly agree with *Greenley* that software can be a "process" if it identifies consumers, gathers data, and correlates that data. *Lesh*, 2025 WL 563358, at *3 (quoting *Greenley*); *Zarif*, 2025 WL 486317, at *12 (quoting *Greenley*); *Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley* and *Shah*); *Shah*, 754 F. Supp. 3d at 928 (quoting *Greenley*).

That is precisely what the FAC in the instant action alleges. (FAC ¶¶ 67-93.) The FAC's allegations allege that third party spyware on the Website engages in unique "fingerprinting" to de-anonymize visitors to the Website.[8] (FAC ¶¶ 67-93.) Thus, the FAC alleges that users are tracked while visiting the Website, which can include when a user

[8] Although Defendant argues that the FAC "does not even allege the four tools can capture IP addresses at all," (Def.'s Mem. at 9:8-9), that is a reasonable inference to be drawn from the de-anonymization and "fingerprinting" of Website users. *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff").

views the page, page interactions, and, of course, the identification of Website visitors. There is nothing "cookie-cutter," (Def.'s Mem. at 8:16), about the allegations regarding the four spyware operating on the Website. (FAC ¶¶ 67-74.)

The Court can and should also infer from the FAC's allegations about the installation of tracking code on Plaintiff's Internet browser that the FAC's allegations allege that the Website's spyware can geolocate[9] users of the Website who are from California as reflected by such users' IP addresses.[10] (FAC ¶ 81.) Thus, the FAC alleges substantial downstream consequences arising from Defendant's capturing of the IP address of Plaintiff's computerized device while visiting the Website.

Thus, the PR/TT beacon alleged in the FAC qualifies as "device or process" within the meaning of subdivisions (b) and (c) of section 638.50 of the Penal Code because it constitutes "software that identifies consumers, gathers, data, and correlates that data." *Greenley*, 684 F. Supp. 3d at 1050.

In addition, the PR/TT beacon is a "device" because "in order for software to work, it must be run on some kind of computing device. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023).

**b. The IP Addresses Collected by the PR/TT Beacons Qualify as "Addressing Information."**

In *Mirmalek*, *supra*, the federal court stated:

> "As the Ninth Circuit held, 'IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.' ' "

[9] As noted by *Greenley*, "courts have found that … the geolocation of the communicating parties are not the 'contents' of a communication under Section 631." *Greenley*, 684 F. Supp. 3d at 1051 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (finding that mere geolocation data is not the "contents" of a communication under the federal Wiretap Act). *Greenley* involved, *inter alia*, the collection of geolocation data by website data collectors. 684 F. Supp. 3d at 1037.

[10] Knowing a user's geographical location "provide[s] a level of specificity previously unfound in marketing." *IP Targeting: Understanding This Essential Marketing Tool*, AccuData, https://www.accudata.com/blog/ip-targeting/; *see* http://web.archive.org/web/20240329095134/www.accudata.com/blog/ip-targeting/ (last visited Feb. 19, 2024).

*Mirmalek*, 2024 WL 5102709, at *4 (quoting *In re Zynga Priv. Litig.*, 750 F.3d at 1108 (quoting *Forrester*, 512 F.3d at 510); *see also Shah*, 754 F. Supp. 3d at 929 (holding that "the IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information.") (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014)); *see also Lesh*, 2025 WL 563358, at *4 ("the IP addresses collected by the Trackers qualify as 'addressing information' under the statute [Penal Code § 638.50]"). In *Lesh*, the federal court noted, "An IP address contains information related to geographical location of a device's state, city, and zip code." *Id.*

The FAC alleges that spyware beacons on the Website collected the IP address of Plaintiff's device. (FAC ¶ 46, 58-59, 64, 80-81, 98-100.) Thus, the collection of the IP address of Plaintiff's device constitutes "addressing" information within the meaning of section 638.50(b) and (c).

**c. IP Addresses Are "Transmitted by an Instrument or Facility From Which a Wire or Electronic Communication Is Transmitted."**

As *Lesh* recognized, "IP addresses are 'transmitted by an instrument or facility from which a wire or electronic communication is transmitted.'" *Lesh*, 2025 WL 563358, at *4 (quoting Penal Code § 638.50); *see also Shah*, 754 F. Supp. 3d at 928-29. As *Lesh* explained:

> "When a user first visits the Website, the browser sends an 'HTTP request' to CNN's server, which then responds with instructions that install the Trackers. Such Trackers prompt the browser to send the user's IP address. These facts adequately allege the transmission of an electronic communication."

*Lesh*, 2025 WL 563358, at *4. Notably, *Lesh* rejected construing section 638.50 as narrowly limited to only the capture of telephone information. *Id.* In referencing subdivision (b) of section 638.50, *Lesh* noted:

> "***The statutory text includes no limitation to information transmitted by telephone or over a phone line. Nor does such a narrow limitation comport with CIPA's purpose.*** CIPA was passed, in part, because 'the development of new devices and techniques for the purpose of eavesdropping upon private communications ... has created a serious threat to the free exercise of personal liberties.' Cal. Penal Code § 630. Consistent with this legislative intent, the definition of pen register in CIPA encompasses a variety of 'electronic communications.'"

*Id.* (emphasis added). Although *Lesh* considered section 638.52, which referenced terms

like "telephone number" and "telephone line," *Lesh* found that "this language is insufficient to support a reading of 'telephone' into the definition of 'pen register.'" *Id. Lesh* explained:

> "Section 638.52 lists requirements authorizing a warrant for a pen register on a telephone line but does not redefine 'pen register' in Section 638.50. Section 638.52 'merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line' but does not otherwise 'alter the statutory definition of a pen register stated in § 63[8].50(b)'. *Shah*, 2024 WL 4539577, at *4. The Court will not read the term 'telephone' into Section 638.50 just because the word is used in another section of the statute that bears little relevance here."

*Id.*; *Shah*, 754 F. Supp. 3d at 930 ("Section 638.52, however, merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line.").[11] *Lesh* concluded, "In short, the plain text of Section 638.50 clearly does not limit the application of pen registers to telephones." *Lesh*, 2025 WL 563358, at *5. *Lesh* is persuasive.

"When an individual internet user visits a web page, his or her browser sends a message called a 'GET request' to the web page's server. The GET request serves two purposes: it first tells the website what information is being requested ***and then instructs the website to send the information back to the user***. The GET request also transmits a refer[r]er header containing the personally-identifiable URL information. Typically, this communication occurs only between the user's web browser and the third-party website." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (emphasis added). Thus, when a user first visits the Website, the user's browser sends an "HTTP request" or a "GET request" to Defendant's Website server, which then responds with instructions that install the PR/TT beacons constituting spyware, which prompts the user's browser to send the user's IP address. The fact that the FAC alleges that the Website is functional shows that the Website transmitted an electronic communication back to Plaintiff's computer device with instructions on how to load the Website's webpages. "These facts adequately allege the transmission of an electronic communication." *Lesh*, 2025 WL 563358, at *4.

[11] Indeed, if California's Legislature enacted "less restrictive legislation" than the Patriot Act, then California's legislation violated the federal floor established by the Pen Register Act (enacted via the ECPA), as amended by the Patriot Act.

**d. Collecting the IP Address of User Devices Collects Record Information, Which Does Not Constitute the Content of Communications.**

Although Defendant contends that the FAC alleges the collection of the contents of user communications, Defendant ignores that the collection of the IP addresses of users' devices that visit the Website does not itself constitute the content of user communications. *See In re Zynga Privacy Litig.*, 750 F.3d at 1108 ("IP addresses 'constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers.'") (quotation omitted).

**e. The Case Law Supporting Plaintiff's Position Is Both Comprehensive and Persuasive.**

Notably, *Greenley*'s conclusion that tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51 has been cited with approval by five recent federal court decisions. *Conohan*, 2025 WL 1111246, at *6; *Lesh*, 2025 WL 563358, at *3; *Zarif*, 2025 WL 486317, at *12; *Autotrader.com, Inc.*, 2025 WL 65409, at *5; *Mirmalek*, 2024 WL 5102709, at *3; *Shah*, 754 F. Supp. 3d at 931 ("Based on the expansive statutory definition of a pen register, 'tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51.'") (quoting *Moody*, 742 F. Supp. 3d at 1076 (citing *Greenley*, 684 F. Supp. 3d at 1050)). *Shah* explained, "Giving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies." 754 F. Supp. 3d at 930 (citing cases).

**2. Defendant Is Not an Electronic Communication Service Provider.**

Defendant's argument that it is an electronic communication service ("ECS") provider under Penal Code § 638.51(b)(1) is without merit. First, assuming *arguendo* that Plaintiff has the burden of pleading/proving the lack of applicability of any portion of subdivision (b) (which is disputed),[12] Plaintiff has sufficiently alleged that Defendant is not an ECS provider. Defendant is not a provider of Internet access including e-mail services,

---

[12] *Cf. Spacone v. Sanford, LP*, 2017 WL 6888497, at *7 n.8 (C.D. Cal. May 11, 2017) (O'Connell, J.) (construing safe harbor provisions as affirmative defenses as opposed to additional pleading elements).

wireless cellular telephone communications, or text-messaging services. That is, Defendant does not serve as a conduit for the transmission of electronic communications from one user to another. The FAC alleges instead that Defendant "is an online fashion retailer that sells products." (FAC ¶ 7.)

"Courts have interpreted the [ECPA] statute to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services." *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012); *see also Casillas v. Cypress Ins. Co.*, 770 Fed. Appx. 329, 330 (9th Cir. 2019) ("websites and services that permit users to communicate directly with one another are considered ECS providers") (citing *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 902-03 (9th Cir. 2008) (holding that wireless communications provider of text-messaging pager services is ECS provider) (noting that "provider of e-mail services" is "undisputedly" an ECS provider) (citing *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004)), *rev'd on other grounds sub nom. City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010)); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 686 (N.D. Cal. 2021) ("facilities that *provide* an electronic communication service" include "an email provider's servers or an ISP") (emphasis in original); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1057 ("[U]ncontroversial examples of facilities that provide electronic communications services" include "the computer systems of an email provider, a bulletin board system, or an ISP."); S. Rep. No. 99-541, at 14, 1986 WL 31929, 1986 U.S.C.C.A.N. 3555, 3568 (Oct. 17, 1986) ("Existing telephone companies and electronic mail companies are providers of electronic communication services.").

Federal courts have rejected construing an ECS broadly to cover merely "sending information to servers" "because it would expand 'electronic communication service' to ***all online services*** and thus render the term meaningless." *Lopez*, 519 F. Supp. 3d at 687 (emphasis added).[13] Given that section 638.51 was patterned after the federal Pen Register

[13] *See also Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 1003-04 (W.D. Wash. 2022); *Leitner v. Morsovillo*, 2022 WL 7074322, at *4 (W.D. Mo. Oct. 12, 2022) ("Many courts have held that 'companies that provide traditional products and services over the Internet,

Continued on the next page

Act, the "provider of electronic … communication service" in section 638.51(b) should be similarly defined narrowly to exclude Defendant. Federal courts decisions have construed the statutory language of the CIPA consistently with the Wiretap Act's construction. *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("'The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.'") (citation omitted); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (Staton, J.).

Notably, a federal district court recently rejected precisely the argument made by Defendant here in a similar action alleging a violation of section 638.51. *Mirmalek*, 2024 WL 5102709, at *5 ("Defendant fails to establish that it is a 'provider of electronic or wire communication service.'").

**3. Section 638.51 Provides a Private Right of Action.**

As *Moody* stated, "§ 637.2 expressly states that all CIPA violations, including § 638.51, confer a private right of action." *Moody*, 2024 WL 3561367, at *4. Section 638.51 is part of the same "chapter" as section 637.2 (*i.e.*, Chapter 1.5). Therefore, violations of Section 638.51 may be redressed through a private right of action.

**4. The FAC Alleges Non-Consent.**

Defendant has failed to satisfy its burden of proving consent as a matter of law.[14] First, Defendant's argument that its own consent counts so as to trigger the Section 638.51(b)(1) exception finds no support in the statutory text, and is "illogical." *Lesh*, 2025 WL 563358, at *5 (rejecting defendant's argument that consent to use Trackers was

as opposed to Internet access itself, are not 'electronic communication service' providers within the meaning of' the SCA."); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 490 (N.D. Cal. 2021) ("The fact that an entity communicates electronically with its customers does not mean that it 'provides an [ECS]'"); *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *3 (N.D. Cal. July 19, 2021); *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 210 (D.D.C. 2018); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (holding that Amazon does not qualify as an ECS). If e-commerce giant, Amazon, does not qualify as an ECS, then why would Defendant qualify? Notably, the federal Pen Register Act's definition of an ECS is identical to the ECPA's definition. 18 U.S.C. § 3127 ("the terms 'wire communication', 'electronic communication', '***electronic communication service***', and 'contents' have the meanings set forth for such terms in section 2510 of this title") (emphasis added).

[14] It is the defendant's burden to prove consent. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024).

obtained from one party to communication, *i.e.*, itself as "self-serving").

Second, the FAC expressly alleges Plaintiff's lack of consent to Defendant's actions, (FAC ¶¶ 2, 60-61, 65, 83, 87, 102, 105), which this Court is required to take as true for purposes of deciding the instant Motion. Notably, the FAC alleges:

> "Plaintiff's investigation of the Website via a computer expert has determined that visitor data is harvested and shared with third-party services immediately upon webpage loading, preceding any opportunity for visitors to consent to or decline the Website's privacy policy."

(FAC ¶ 65.) Notably, in *Autotrader.com*, *supra*, the federal court rejected the defendant's consent argument with respect to the claim alleging the violation of section 638.51 by noting that:

> "Indeed, Plaintiff alleges that the software was installed immediately upon loading the Website before she had any opportunity to consent to Defendant's Privacy Policy."

*Autotrader.com*, 2025 WL 65409, at *6. The Court should follow *Autotrader.com*.

Notably, in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), the Ninth Circuit interpreted section 631(a) of the California Penal Code as requiring "prior consent," and predicted that the California Supreme Court would interpret such statute in such manner. *Id.* at *2 ("Based on these statements by the California Supreme Court, we conclude that the California Supreme Court would interpret Section 631(a) to require the ***prior consent*** of all parties to a communication.") (emphasis added). Although the Ninth Circuit in *Javier* was interpreting section 631(a), the supportive "statements" of the California Supreme Court cited by *Javier* included the emphasis that "all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Javier*, *id.* at *2 (citing *Ribas*, 38 Cal. 3d at 359 (citing Cal. Penal Code § 630)).

"That the person communicating knows that the interceptor has the *capacity* to monitor the communication is insufficient to establish implied consent." *In re Google*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (emphasis in original); *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) ("***foreseeability of monitoring is insufficient to infer consent***") (emphasis added). Notably, Defendant ignores *Staves*, which this Court is bound to follow.

If anything, the specific use of an Internet user's IP address for the user's computerized device implicitly agreed upon by the user is the disclosure of the device's IP address solely to communicate with the website visited by the Internet user. Any such limited and narrow consent to the use of the Internet user's IP address, however, is limited to communicating with the website that the user wants to visit. Users do not expect the IP address on their device to be collected by surreptitious tracking software code embedded into the websites that they visit with the goal of de-anonymizing such website visitors so that their website history can be tracked and monetized by those involved in the identity resolution industry. *Shah*, 754 F. Supp. 3d at 932 ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers.").

**C. The Court Should Reject Defendant's Attempt to Smear Plaintiff and Her Counsel.**

The Court should reject Defendant's unseemly attempt to smear Plaintiff and her counsel. (Def.'s Mem. at 1 n.1; 4:20-5:28; 6:20); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("The Court is troubled that Defendants have devoted valuable pages in their Opposition to an apparent smear campaign . . . ."). What makes Defendant's argument all the more appalling is its blatant violation of L.R. 11-6.1 because if one combines together the text of its Memorandum (6,797 words) with Appendix A attached thereto (1,725 words), the total word count is 8,522 words, which far exceeds the 7,000 word limit. Perhaps this is why Defendant neglected to attach a mandatory Certificate of Compliance.

Dated: May 9, 2025

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*
Scott. J. Ferrell
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 9, 2025

*/s/ Scott J. Ferrell*
Scott J. Ferrell